# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAZJANAE JOHNSON, on behalf of herself and all other plaintiffs similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 19-cv-6371 |
| TRUDO REALTY, LLC and CHRISTOPHER CATON | ) ) ) | |
| Defendants. | ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

NOW COMES Plaintiff Tazjanae Johnson ("Johnson" or "Plaintiff") on behalf of herself and all other plaintiffs similarly situated, by and through her attorneys, and for her Class and Collective Action Complaint against Defendants Trudo Realty, LLC and Christopher Caton (collectively, "Defendants") states as follows:

### Nature of the Action

1. This civil action is brought by the above-named plaintiff who brings this class and collective action claim for minimum wage and overtime under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") pursuant to 29 U.S.C. § 216(b) and under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq* and the Chicago Ordinance on Minimum Wage ("Chicago Ordinance"), Chicago Mun. Code Chap. 1-24 pursuant to Fed. R. Civ. Pro 23. Plaintiff also brings individual and class claims under the Biometric Information Privacy Act ("BIPA"), 735 ILCS 14/1 *et seq.* pursuant to Fed. R. Civ. Pro 23.

### Parties

2. Plaintiff worked as an hourly-rate employee for Trudo.

1

3. Defendant Trudo is a Chicago-based real estate firm with approximately 50 employees who work for it.

4. Defendant Trudo is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA.

5. During the last three years, Defendant Trudo's annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise tax.

6. Defendant Trudo is the Plaintiff's "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

7. Defendant Trudo is the Plaintiff's "employer" as defined by the IMWL. 820 ILCS 105/3(c)

8. Plaintiff was Defendants' "employee" as that term is defined by the FLSA. 29 U.S.C. §203(e)(1)

9. Plaintiff was Defendants' "employee" as that term is defined by the IMWL. 820 ILCS 105/3(d)

10. Defendant Caton is Trudo's owner and managing broker. He signs paychecks and retains control over, and directed, the pay practices described in this Complaint.

11. Subject matter jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and 28 USC 1367 and by 29 U.S.C. § 216(b) and venue is appropriate because Defendants in Chicago, Illinois.

## Factual Allegations

### Minimum Wage and Overtime Allegations:

12. Plaintiff worked for Defendants within the past three years as an employee, although they attempted to misclassify her as an independent contractor.

13. To avoid paying workers minimum wage and overtime, the Defendants misclassify workers, including Plaintiff, as independent contractors. They, however, are not independent contractors.

14. Defendants intentionally did not pay Plaintiff and similarly situated employees proper overtime wages of one and one-half time their regular rate of pay for all hours worked above forty hours in a work week and also failed to pay them their minimum wages.

15. Despite working 35-45 hours (or more per week), the Plaintiff was not paid any base wage but was paid on a commission only structure. As an example, Plaintiff worked from mid-July until September 10, 2019. During that time she was paid one commission for $1,400. As such, she earned approximately $4.00 per hour. She also was not paid overtime premiums.

16. Plaintiff performed her job responsibilities for Defendant in the State of Illinois and specifically in the City of Chicago.

17. Other similarly situated employees have been employed by the Defendant and have not been paid the required overtime wages at one and one-half times their regular rate of pay and minimum wages as required by law.

18. The named Plaintiff, and similarly situated employees, were not exempt from the overtime provisions of the FLSA.

**The Biometric Information Privacy Act Allegations.**

19. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

20. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's biometric scanners were completely unaware that the scanners were not actually transmitting data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

21. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

22. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

23. The BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an

4

employee as a condition of employment." 740 ILCS 14/10.

24. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprint. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

25. The BIPA also establishes standards for how companies in possession of biometric identifiers and biometric information must handle them. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

26. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

27. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

5

28. Unfortunately, Defendants failed to address these concerns. Trudo continues to collect, store, and use workers biometric data in violation of the BIPA.

29. Specifically, Trudo uses the KeyTrak system in order to keep track of its key inventory. Trudo employees use their fingerprint as a means of authentication to access a key and to create an audit trail identifying the employee who check out a key.

30. Trudo failed to inform employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

31. Trudo similarly failed to provide employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves their job does so without any knowledge of when their biometric identifiers will be removed from Trudo's databases—or if they ever will be.

32. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Trudo's—where the employees are aware that they are providing biometric identifiers to their employer but are not aware of the full extent of the reasons they are doing so, nor are informed who else is receiving this data—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Trudo disregards these obligations, and instead unlawfully collects, stores, and uses employees' biometric identifiers and information without proper consent.

33. Ultimately, Trudo disregards employees' statutorily protected privacy rights by violating the BIPA.

**FACTS SPECIFIC TO PLAINTIFF**

34. Plaintiff worked for Defendant in Illinois, ending in 2019.

35. Plaintiff was not exempt from the overtime or minimum wage provisions of the FLSA, IMWL or the Chicago Ordinance.

36. Defendant required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to grant access to its key inventory and track employee access.

37. Each time Plaintiff wanted to obtain a key, she used the biometric system.

38. Defendants never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

39. Similarly, Defendant never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

40. Plaintiff never signed a written release allowing Defendants to collect or store fingerprints.

41. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants violations of the BIPA alleged herein.

**42.** Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Defendant Trudo has caused.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

43. Plaintiff seeks to maintain her overtime lawsuit as a Collective pursuant to 29 U.S.C. §216(b) and as a Class pursuant to Fed. R. Civ. Pro. 23 on behalf of herself and all other non-exempt employees who were not fully compensated for overtime hours worked because their received premium pay that was not factored into their overtime date.

44. Plaintiff and other similarly situated current and former employees in the asserted class were subject to Defendant's policies and regularly worked over 40 hours per week but were not fully

paid their overtime hours at one and one-half times their regular rate of pay or even their basic minimum wages.

45. Plaintiff and asserted members of the Collective and Class are similarly situated because, *inter alia*, they all were not paid the required overtime rate of one and one-half times their regular rate of pay for all work in excess of 40 hours per week and/or were not properly compensated due to Defendant's policies, and had such rights undermined and neglected by Defendant's unlawful practices and policies

46. Defendant has encouraged, permitted, and required the Class and Collective to work without required minimum wage compensation and overtime compensation of one and one-half times the regular rate of pay and without being paid for all time.

47. Defendant has known that Plaintiff and other members of the Class and Collective have been deprived of required compensation and overtime compensation. Nonetheless, Defendant has operated under a scheme to deny the Plaintiff and the Class and Collective the required compensation and one and one-half time their regular rate of pay for work in excess of 40 hours and also did not pay them their overtime compensation.

48. Plaintiff also seeks to maintain a separate Class pursuant to Fed. R. Civ. Pro 23 on behalf of herself and all other employees who had their biometric information collected by Defendant without written consent.

49. Plaintiff and other similarly situated current and former employees had their biometric information collected by Defendant without consent. Plaintiff seeks to maintain her biometric class action on behalf of the following class:

> All workers in the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendant.

50. The following people are excluded from the Class: (1) any Judge presiding over this action

8

and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

52. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendant collected, captured, or otherwise obtained Plaintiff and the Class' biometric identifiers or biometric information;

   b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

   d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

   e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying

9

     biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

  f) whether Defendant complies with any such written policy (if one exists); and

  g) whether Defendant used Plaintiff and the Class' fingerprints to identify them.

53. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

54. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**COUNT I - FAIR LABOR STANDARDS ACT**
**(Plaintiff Individually and on Behalf of All**

**Similarly Situated Employees Pursuant to 29 U.S.C. §216)**

55. The Plaintiff re-alleges and incorporates the prior allegations of this Complaint.

56. Under the FLSA, Plaintiff and the Collective were entitled to be paid at the overtime rate by Defendant for each hour worked in excess of 40 hours each work week at one and one-half times their regular rate of pay. They also were required to be paid the statutory minimum wage.

57. Defendant failed to compensate the Collective at the proper overtime rate or the required minimum wage.

58. Upon information and belief, Defendant's practices were not based upon Defendant's review of any policy or publication of the United States Department of Labor and therefore was willful and deliberate.

**59.** Due to Defendant's violations of the FLSA, the FLSA Class is entitled to recover from Defendant their unpaid compensation, liquidated damages, reasonable attorney's fees, and the costs of this action, pursuant to 29 U.S.C.§216(b).

WHEREFORE, the Plaintiff requests the following relief, individually and on behalf of similarly situated employees:

  A. A declaratory judgement that Defendant violated the wage provisions of the FLSA as to the Plaintiff and similarly situated employees;

  B. A declaratory judgment that Defendant's violations of the FLSA was willful;

  B. Unpaid compensation;

  B. An additional amount equal as liquidated damages;

  C. Prejudgment interest;

  D. Reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b); and

11

E. Such other and further relief as this Court deems appropriate and just.

## COUNT II - ILLINOIS MINIMUM WAGE LAW
**(Plaintiff Individually and on Behalf of All
Similarly Situated Employees Pursuant to Fed. R. Civ. Pro 23)**

60. Plaintiff hereby alleges and incorporates the prior allegations of this Complaint, as is fully set forth herein.

61. This count arises from Defendant's violation of the minimum wage and overtime compensation provisions of the IMWL, 820 ILCS § 105/1 *et seq.*

62. Under the IMWL, Defendant was and remains obligated to compensate Plaintiff, and similarly situated employees, for all hours worked in excess of 40 hours in any individual work week and also at the applicable minimum wage.

63. Plaintiff was regularly permitted, encouraged and/or required to work in excess of 40 hours per week but was not compensated at the required one and one-half times her regular rate for such overtime work and also not paid for overtime.

64. By failing to pay overtime compensation due to Plaintiff, Defendants willfully, knowingly and/or recklessly violated the IMWL which requires overtime compensation of one and one-half times the regular rate to be paid and statutory minimum wages.

65. As a result of Defendant's policy and practices, Plaintiff and similarly situated employees have been damaged in that they have not received wages due to them pursuant to the IMWL.

WHEREFORE, Plaintiff requests the following relief individually and on behalf of similarly situated employees:

A. A Declaratory Judgement that Defendant violated the wage provisions of the IMWL as to the Plaintiff and similarly situated employees;

B. A declaratory judgement that Defendant's violations of the IMWL were willful;

C. Unpaid compensation;

D. A judgment of punitive damages, including statutory interest of 5% per month, as provided by IMWL;

E. A judgement of reasonable attorney's fees and costs incurred in filing this action; and

F. Such other and further relief as this Court deems appropriate and just.

**COUNT III - VIOLATION OF THE CHICAGO ORDINANCE ON MINIMUM WAGE**
**(Plaintiff Individually And On Behalf Of All Similarly Situated Employees Pursuant to Fed. R. Civ. Pro. 23 Against Defendants)**

55. Plaintiff hereby realleges and incorporates paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56. This count arises from Defendants' violation of the minimum wage provisions of the Chicago Ordinance, Chicago Muni. Code, Chapter 1-24-010, et seq.

57. Plaintiff and similarly situated employees are "covered employees" as that term is defined in the Chicago Ordinance.

58. Defendants are each "Employers" as that term is defined in the Chicago Ordinance.

59. Prior to the filing of this Complaint, Defendants did not post the notice concerning the Chicago Ordinance and did not provide Plaintiff or other similarly situated employees with notice with their first paycheck as required by the Chicago Ordinance.

60. Under the Chicago Ordinance, Defendants were and remain obligated to

13

compensate Plaintiff and similarly situated employees at a rate of no less than $13 per hour for all hours worked in the City of Chicago after July 1, 2019 and at lesser rates prior to that time.

     61.    Defendants have failed to pay Plaintiff and similarly situated employees the minimum wage required by the Chicago Ordinance.

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

    A.    Certification of a class of Plaintiffs;

    B.    A declaratory judgment that Defendants have violated the Chicago Ordinance as to the Plaintiff and the Class;

    C.    A declaratory judgment that Defendants' violations of the Chicago Ordinance were willful;

    D.    A judgment to Plaintiff and the Class in the amount of unpaid wages;

    E.    A judgment to Plaintiff and the Class of treble damages as provided by the Chicago Ordinance;

    F.    A judgment to Plaintiff and the Class of reasonable attorneys' fees;

    G.    Costs incurred in filing this action; and

    H.    Such other and further relief as this Court deems appropriate and just.

**COUNT IV – BIOMETRIC INFORMATION PRIVACY ACT**
**735 ILCS 14/1, *et seq.***
**(Plaintiff Individually and on Behalf of All**
**Similarly Situated Employees Pursuant to Fed. R. Civ. Pro 23)**

     62.    Plaintiff hereby alleges and incorporates the prior allegations of this Complaint, as is fully set forth herein.

     63.    Defendant violated the Biometric Information Privacy Act ("BIPA")by collecting and storing worker's biometric information, including Plaintiff's

information, and failing to inform Plaintiff or similarly situated employees in writing, and failing to obtain a written release regarding biometric information from employees.

64. Defendant collected and stored Plaintiff's and similarly situated employees' biometric data by utilizing a biometric key tracking system.

65. Fingerprints are a unique and permanent identifier, the collection of which puts Plaintiff and other employees' privacy at risk. This is the very risk that BIPA is intended to protect against.

66. Plaintiff and other similarly situated current and former employees were aggrieved by the above conduct.

WHEREFORE, Plaintiff requests the following relief on behalf individually and on behalf of all similarly situated:

A. Injunctive and equitable relief as is necessary to protect the Plaintiff and Class by requiring Defendants comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein;

B. Statutory damages per violation for each of BIPA violation;

C. Reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3)

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint, including FLSA claims.

Dated: September 23, 2019 	Respectfully Submitted,

	By: /s/ David Fish
	One of the Attorneys for the Plaintiff

David J. Fish
Kimberly Hilton
John Kunze
Thalia Pacheco
THE FISH LAW FIRM P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563

16